(C. D. 1892)

GALLAGHER & ASCHER COMPANY v. UNITED STATES

United States Customs Court, Second Division

(Decided June 26, 1957)

*Wallace & Schwartz* (*Barnes, Richardson & Colburn* by *Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: The instant protest relates to an importation of meat-slicing machines, which were classified by the collector of

customs at the port of entry as household utensils, not specially provided for, and assessed with duty at the rate of 4¼ cents per pound and 20 per centum ad valorem, presumptively by virtue of the provisions of paragraph 339 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739, wherein the following is provided:

Table, household, kitchen, and hospital utensils, and hollow
or flat ware, not specially provided for, whether or not con-
taining electrical heating elements as constituent parts:
Electric flatirons, fly swatters, illuminating articles,
and household food grinding or cutting utensils other
than meat and food choppers, all the foregoing:
       \*      \*      \*      \*      \*      \*      \*
Composed wholly or in chief value of aluminum_ 4¼¢ per lb.
and 20% ad val.

Plaintiff claims said merchandise to be dutiable at only 15 per centum ad valorem, pursuant to the provision in paragraph 372 of said act, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T. D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 116, T. D. 52462, for machines, not specially provided for.

The parties having stipulated that the articles at bar are, in fact, machines, plaintiff predicates its claim for recovery herein upon the argument that these machines are not of the household variety and, therefore, not covered by the provisions of said paragraph 339, as modified, *supra*.

Counsel for the Government, in effect, urges that whether or not the involved machines are household utensils within the purview of paragraph 339, as modified by said Torquay protocol, they are, in any event, kitchen utensils and, hence, are provided for in said paragraph 339, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, which reads as follows:

Table, household, kitchen, and hospital utensils, and hollow
or flat ware, not specially provided for (except articles com-
posed wholly or in chief value of tin or tin plate, electric
flatirons, fly swatters, illuminating articles, and household
food grinding or cutting utensils other than meat and food
choppers), whether or not containing electrical heating ele-
ments as constituent parts thereof:
       \*      \*      \*      \*      \*      \*      \*
Composed wholly or in chief value of aluminum_____ 4¼¢ per lb.
and 20% ad val.

The record consists of the testimony of one witness for each of the parties, together with a pictorial representation of the imported item, which was received in evidence as plaintiff's exhibit 1.

It appears from the testimony of David R. Spilky, owner of Chicago Scale & Slicer Co., the real importer herein, that his company is en-

gaged in the manufacture, sale, and importation of restaurant and meat market equipment. The company deals strictly with restaurant and meat market equipment dealers throughout the United States, "who buy and sell directly to meat markets, restaurants, and institutions where they have kitchens for feeding the public."

This witness described the importation as follows:

It consists of a hand-operated meat slicing machine made of cast aluminum, highly polished. The table of the machine is mounted on roller bearings. The blade is of stainless steel with a wavy edge. Otherwise the entire machine is of aluminum.

He stated that he is familiar to some extent with meat-slicing machines of the household variety, having seen them used in households for the past 3 to 5 years, and that the machines at bar differ therefrom in that they are of higher quality, better construction, and greater price.

On cross-examination, this witness testified as follows:

X Q. But all these different types of machines, whether heavy machines or the lighter type, they are in many instances used in kitchens, aren't they?—A. You mean commercial kitchens?

X Q. Any kind of a kitchen.—A. All I know is that these machines are used in commercial kitchens, in restaurant kitchens.

X Q. Kitchens, sure.—A. Hotel kitchens.

X Q. That's right. That's true with all of the equipment that you are talking about including the imported merchandise?—A. That's right.

The witness for defendant was Harry E. Goldman, a commercial refrigerator dealer, who also handles food slicers, meat grinders, and scales for commercial establishments, such as food stores. Inasmuch as his experience with the meat-slicing machine at bar was limited to the purchase of four machines over a 2-year period, which machines were sold to customers coming into the shop from the street, and he had never seen them used by anybody at all, we do not consider his testimony as having any significance herein.

Implicit in the collector's classification of the instant meat slicers as household utensils is the finding that they were chiefly used in the household, and the burden rested with the plaintiff to establish the contrary by competent evidence. *Frank P. Dow, Inc.* v. *United States*, 21 C. C. P. A. (Customs) 282, T. D. 46816. While there is precedent to support the proposition advanced by plaintiff that the testimony of one witness may be adequate to prove a *prima facie* case, to establish or negative chief use, especially when the witness is an importer and distributor of the article in issue (*Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, T. D. 31120; *United States* v. *Gardel Industries*, 33 C. C. P. A. (Customs) 118, C. A. D. 325), nevertheless, the evidence such a witness gives must be of a sufficiently probative character to sustain all essential facts.

It is apparent that the record in this case is not a substantial one. Much of the evidence adduced for the plaintiff relates to restaurant and meat market equipment generally, without specific reference to the particular model or kind of meat-slicing machine here involved. The area of identification of this product with the importer's transactions throughout the United States and the locale or extensiveness of its use in commercial establishments are by no means sharply defined.

Furthermore, although the witness for the plaintiff assumed to differentiate between meat-slicing machines of the household variety and those at bar, upon the basis of differences in quality, construction, and value, he was not shown to have had great familiarity with the articles which have a household use. His experience with the latter, by his own admission, was limited both in extent and in time.

In addition, the fact, as stated by the witness that "these machines are used in commercial kitchens, in restaurant kitchens," even when considered in connection with his attempt to distinguish between household-type meat slicers and the imported article, does not carry with it the necessary inference that these articles are of a class or kind not chiefly used in the household.

We are of opinion that, taken as a whole, the instant record falls short of negativing the presumed correctness of the collector's classification.

However, even were we to find that chief use of the instant meat slicers in the household had been disproved, there are further considerations militating against plaintiff's recovery in this case. Paragraph 339, as originally enacted, and as modified, *supra*, provides for kitchen as well as household utensils, and the use of these machines in kitchens, albeit commercial kitchens, is virtually conceded by the plaintiff. As pointed out by counsel for the Government, Congress, in employing both words in the provision in question, must have intended a separate meaning for each. It may not be assumed, in the absence of clear and convincing indication to the contrary, that Congress used the two words synonymously, since wherever possible, unless absurd results ensue, all language contained in a statute must be given its full force and effect. *Lehn & Fink (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 359, T. D. 40519; *S. H. Kress & Co.* v. *United States*, 22 C. C. P. A. (Customs) 421, T. D. 47423. If it were intended that only those kitchen utensils which had a chief use in the household were to be covered into the paragraph, no reason exists for separately enumerating kitchen utensils, and such designation would amount to mere surplusage. We are not at liberty to assume that Congress has employed unnecessary language. *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714.

This view appears to have been the basis of the decision in the case of *Person & Weidhorn* v. *United States*, 62 Treas. Dec. 808, Abstract 21008, wherein certain noodle-cutting machines, shown to have been used in the kitchens of hotels, restaurants, clubs, and institutions, were held to have been properly classified as kitchen utensils within the provisions of paragraph 339 of the Tariff Act of 1922, notwithstanding the fact that they were not also household utensils.

Of course, the collector having classified the merchandise at bar as one of the articles enumerated in said paragraph 339, the presumption of the correctness of his action, and the existence of all facts necessary to sustain it, does not extend to other kinds of articles covered by the paragraph. *United States* v. *White Sulphur Springs Co.*, 21 C. C. P. A. (Customs) 203, T. D. 46728. Yet, if the record as here made may be said to establish any fact, it is that the instant articles are of the kind chiefly used in kitchens. The provision for kitchen utensils being a use designation, it must prevail over the *eo nomine* designation for machines, not specially provided for. *United States* v. *Snow's United States Sample Express Co.*, 8 Ct. Cust. Appls. 351, T. D. 37611; *United States* v. *Lansen-Naeve Corp.*, 44 C. C. P. A. 31, C. A. D. 632.

In any event, therefore, the merchandise at bar is provided for in said paragraph 339, either as kitchen utensils, within the modification thereof effected by the General Agreement on Tariffs and Trade, or as household food-cutting utensils, within the modification effected by the Torquay Protocol to said General Agreement on Tariffs and Trade, and was properly assessed with duty at the rate of 20 per centum ad valorem and 4¼ cents per pound. All claims in the protest are, therefore, overruled.

Judgment will be entered accordingly.