(C. D. 1985)

MORRIS FRIEDMAN v. UNITED STATES

United States Customs Court, Second Division

(Decided April 24, 1958)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Richard E. FitzGibbon*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: An importation of so-called "Non-Electric Dry-Shavers" was classified by the collector of customs as machines, not specially provided for, in paragraph 372 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 372), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T. D. 54108, and duty was imposed thereon at the rate of 13 per centum ad valorem.

Plaintiff claims that said articles should be classified as "Safety razors" in paragraph 358 of said act (19 U. S. C. § 1001, par. 358), as modified, *supra*, and dutiable at 11½ per centum ad valorem, but not less than 2.375 cents each and 7 per centum ad valorem.

At the trial, Frank J. McNichol, the only witness in the case, was called by the plaintiff. He testified that he was sales manager for

the Witte Import Distributors, the ultimate consignee herein, engaged in the importation of various items for distribution in this country and Canada. McNichol produced a sample of the importation, which was received in evidence as exhibit 1. He explained his familiarity with the article through making sales of the commodity in Canada and the United States; had used the article, repaired it, and knew many people who had used it, namely, for shaving the beard. The operation of the article was explained as follows: By pulling a nylon cord, a heavy weighted flywheel is caused to rotate; the flywheel, being geared to a shaft, develops a high speed. Attached to the shaft are four sharp cutting blades, which are covered by a guard to prevent the skin from being cut while in use. As stated by the witness, "The instrument is pressed against the beard; the guard permits the hairs of the beard to engage the blades and they're cut off without injuring the skin."

As the case is presented, there is no disputed question of fact. In view of the circumstances above related, the sole question for determination is whether the article in controversy is a safety razor in the common acceptation of that term. It is not disputed that the article is a machine in a tariff sense but, of course, if it be in fact a safety razor, the *eo nomine* provision for that commodity would be more specific than that for machines.

As an aid to our understanding of the common meaning of the term safety razor, we have resorted to the following definitions of that term:

Webster's New International Dictionary, second edition (1948):

Safety razor. A razor provided with a guard or guards for the blade to prevent cutting the skin.

The same definition appears in Webster's New Collegiate Dictionary, second edition (1956).

New Century Dictionary of the English Language, 1946 edition:

safety-razor, *n.* A razor provided with a guard or guards to prevent cutting the skin.

Encyclopaedia Britannica, 1947 edition, volume 19, page 3:

Safety Razor.—The razor is naturally considered a dangerous instrument, and many attempts have been made to make it safe. Not until the introduction of the "Gillette" type of razor, at the beginning of the 20th century, was a satisfactory solution found. The principle of the "safety" razor is to place a guard between skin and cutting edge of the razor blade, so that the guard permits the edge to pass over the uneven surface of the part to be shaved, removing the hair without cutting the skin. In some cases devices are provided to enable the user to strop or resharpen the blades. * * *

In our opinion, the dry shave razors here in controversy, in character, construction, and use, respond to our conception of the term "safety razor." While it may be true that the well-known Gillette

safety razor, which is not a dry shave razor, may, as indicated in Britannica, have been the first type of safety razor, it is a matter of common knowledge that, in more recent years, there have been developed other types of safety razors, some electric safety razors such as the Remington and Schick, while others were constructed more in the nature of the Gillette type.

We are clearly of the opinion that the dry shave razor with which we are here concerned is within the spirit and intent of the term "safety razor," as it is used in the protocol above referred to, which was proclaimed June 13, 1956.

In their briefs, adversary counsel have referred to our decision in *The British Industries Corp.* v. *United States*, 26 Cust. Ct. 337, Abstract 55139, promulgated January 18, 1951. The merchandise in that case was described as dry shave razors, which were classified by the collector in paragraph 397 of the Tariff Act of 1930 as articles or wares of metal, not specially provided for. Although the plaintiff had originally contended that the dry shave razors there in controversy should be classified as razors in paragraph 358 of said act, that claim was abandoned by plaintiff who relied solely upon the claim that said articles should be classified as household utensils in paragraph 339 of said act.

As the issue was thus drawn, the court found that the evidence failed to show the chief use of the commodity as a household utensil and overruled the protest on all grounds. However, in passing, we said by way of dictum that the articles might properly have been classified as safety razors, but inasmuch as the claim for such classification had been abandoned, that issue was not before us.

Based upon the record herein and an inspection of exhibit 1, we find and hold that the merchandise in controversy consists of safety razors and should be so classified in paragraph 358, as modified, *supra*, and assessed with duty at the rate claimed by the importer.

Judgment will issue accordingly.