(C.D. 2337)

Commercial Adolfo S. Pagan, Inc.
Insular Construction & Supply Co. } v. United States

United States Customs Court, Third Division

(Decided May 3, 1962)

*Jaime Pieras, Jr.*, for the plaintiffs.

*William H. Orrick, Jr.*, Assistant Attorney General (*Murray Sklaroff* and *Richard H. Welsh*, trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: The merchandise involved in these cases is described on the invoices as china or vitreous china water closet tanks. They are used in connection with flush toilets. The articles were assessed with duty at 31½ per centum or 30 per centum ad valorem under paragraph 212 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as porcelain sanitary ware. They are claimed to be dutiable at 11½ per centum ad valorem under paragraph 372 of said tariff act, as so modified, as other machines, not specially provided for.

The pertinent provisions of the tariff act, as so modified, are as follows:

| Tariff Act of 1930, paragraph | Description of Products | Rates of Duty | | |
| --- | --- | --- | --- | --- |
| | | A | B | C |
| 212 | China, porcelain, and other vitrified wares, including chemical porcelain ware and chemical stoneware, composed of a vitrified nonabsorbent body which when broken shows a vitrified or vitreous, or semivitrified or semivitreous fracture, * * * all the foregoing, whether plain white, painted, colored, tinted, stained, enameled, guilded, printed, or ornamented or decorated in any manner, and manufactures in chief value of such ware, not specially provided for: | | | |
| * | * * * | * | * | * |
| | Sanitary ware and fittings and parts therefor_____ | * * * | 31½% ad val. | 30% ad val. |
| * | * * * | * | * | * |
| 372 | Machines, finished or unfinished, not specially provided for: * * * | * | * | * |
| * | Other (except food preparing and manufacturing machinery; hydraulic reaction turbines and hydraulic impulse wheels; internal-combustion engines; and except wrapping and packaging machinery)___ | * * * | 12% ad val. | 11½% ad val. |

Note: The rates in column A became effective on June 30, 1956; those in column B on June 30, 1957; and those in column C on June 30, 1958.

The merchandise covered by protest No. 60/31400 was entered for consumption on November 27, 1957, and April 29, 1958, and that covered by protest No. 60/31401 on various dates between February 19, 1958, and January 14, 1959.

At the trial, counsel for the Government moved to consolidate the two protests. Protest No. 60/31400 is in the name of Commercial Adolfo S. Pagan, Inc. (hereinafter called Pagan) and protest No. 60/31401 is in the name of Insular Construction & Supply Co. (hereinafter called Insular). Counsel for the Government stated that these companies are one and the same, but counsel for the parties plaintiff stated that they are separate and distinct corporations, and he, therefore, objected to the consolidation.

Rule 38 of the rules of this court provides:

When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

In the instant case, it appears that the merchandise covered by the two protests is the same; that it was assessed with duty under the same paragraph; that the same claim is made in both protests; and that the parties plaintiff are represented by the same attorney. Since the actions involve a common question of law and fact, they may properly be consolidated in order to avoid unnecessary costs and delay. The motion for consolidation is granted.

At the opening of the trial, counsel for the Government stated that the water tanks such as those involved herein had been held to be semiautomatic machines in C.D. 1778 (*The Durst Mfg. Co., Inc.* v. *United States*, 36 Cust. Ct. 220, C.D. 1778) and that this classification would have been applied in the instant case, except for the fact that toilet bowls were imported at the same time on the same vessel. The collector, therefore, considered the bowls and tanks entireties, properly dutiable under paragraph 212, *supra*. Counsel stated:

MR. SKLAROFF: I already have conceded for the record that the tanks the subject of these two protests, if they had been imported alone, separately, would be subject to the principles set down in C.D. 1778, classifiable as a machine under 372, semi-automatic machine under 372.

\*　　\*　　\*　　\*　　\*　　\*　　\*

MR. SKLAROFF: I would like to make one further observation. When I said the tanks, if imported alone would be subject to the principle of law set down in C.D. 1778, I meant assuming they were in chief value of metal. I hope the court did not take my words as meaning that we concede that it is so. It must be chief value of metal. That is what the importer will have to establish.

Efrain Picon, called as a witness on behalf of the defendant, stated that he was a customs examiner in San Juan, Puerto Rico, and that

he was familiar with the merchandise covered by these protests. He testified that when he was working on the advisory classification thereof, he had before him a copy of a letter from Pagan to the Bureau of Customs and a copy of the Bureau's reply. The letter from Pagan states that Insular is a wholly owned subsidiary and asks whether one concern may import toilet bowls and the other tanks at the same time on the same vessel and have them assessed with duty separately. The Bureau's reply is to the effect that, under the circumstances, they would be considered entireties and dutiable accordingly. These letters were received in evidence as defendant's collective exhibit A only for the purpose of showing the reason for the examiner's action. The examiner testified that, at the time of classification of this merchandise, he also had before him certain entries of bowls which he ascertained were imported on the same vessel and on the same day and which he thought corresponded with the tanks covered by these protests. For instance, he stated that entry No. 3912 corresponded to entry No. 3913 covered by protest No. 60/31400. The latter is in the name of Pagan and covers 71 crates containing water tanks, imported on November 23, 1957, on the SS "Sunamelia." According to the witness, entry No. 3912 covered 71 vitreous china water closet bowls and 21 vitreous china lavatories, imported on the same date on the same vessel for the account of Insular.

Entry No. 3912 and the other so-called companion entries were offered in evidence by the Government, but, upon objection by counsel for the plaintiffs, decision was reserved for the division. In its brief, counsel for the Government concedes that the offer is unsound and has withdrawn it.

A motion that the official papers in the cases before us be deemed in evidence was also taken under advisement to be passed upon by the division. This motion is granted.

Mr. Picon testified further that he advisorily classified the tanks and the bowls as units on the ground that one importing corporation was a subsidiary of the other and that they were going to put the articles together and use them as single entities. In his opinion, one was not a complete article without the other.

Raul H. Carcache, called as a witness for the plaintiffs, testified that he is the manager of the plumbing division of Pagan; that he is a salesman and has been dealing with merchandise such as that involved herein for 13 years. He had at one time worked for a sanitary fixtures manufacturer in the United States. He stated that he was acquainted with the values of the components of these water tanks and that the tanks were in chief value of metal. He testified:

In this particular instance, the water closet of this semi-automatic machine, although it has been given a commercial value for breaking down or arriving

at the price of the metal and the other materials, actually the chief value is metals, not only because the metals are higher priced than the rest of it, but also because the empty box has actually no commercial value. This merchandise being brought in is what they call factory rejected, and it has no domestic value. It is only sold to export markets, and as a matter of fact, I worked for this manufacturer, and even today what they consider reject material, although the functioning might be perfect, which is again why the metals are the chief value, because that is the only thing that really has 100 percent value.

Q. So you would say that the chief value, that this article has in chief value of metal?—A. Yes, definitely so. I may add that the rest of the material, what is left after the metals are taken out, is being broken, destroyed by manufacturers in the States, so it has no domestic value.

The witness also testified that when Pagan receives bowls and tanks, it does not put them together, but sells them separately. They are not necessarily sold to the same consumers, since Pagan is a wholesaler who sells to plumbing subcontractors, who, in turn, install them or sell them to retailers. While the bowls and tanks are adaptable for use together, Pagan does not put them together.

On the record presented, plaintiffs claim that the tanks are properly dutiable under paragraph 372, *supra*, as machines, relying upon *The Durst Mfg. Co., Inc.* v. *United States, supra*. The collector classified the merchandise as sanitary ware in chief value of porcelain under paragraph 212, *supra*, on the ground that the tanks were entireties with bowls brought in at the same time. The Government has apparently abandoned this position, but claims, in its brief, that the evidence fails to establish that the tanks are in chief value of metal or that they are machines.

The merchandise involved in *The Durst Mfg. Co., Inc.* v. *United States, supra*, was described as a ball cock assembly, which the collector classified as in chief value of metal. It consisted of parts of a toilet-box mechanism, which mechanism was composed of various levers, valves, and other parts, motivated by natural forces which were utilized and applied to transmit motion. The court held that the complete assembly was a machine and that the imported ball cock assembly parts were constituent and integral parts thereof, essential to its operation, and, therefore, dutiable as parts of a machine.

Although the Government now claims, in its brief, that the imported tanks are not classifiable as machines on the ground that insufficient evidence was presented on this point, it conceded, at the trial, that such tanks were classifiable under paragraph 372, as machines, if in chief value of metal. This issue, therefore, is not before the court.

Defendant's chief claim is that the evidence does not establish that the tanks are in chief value of metal. Plaintiffs contend, however, that, since the tanks are machines, they are dutiable as such, regardless of the component material of chief value.

The tariff provisions covering machines in paragraph 372 of the present tariff act and its predecessors have been held unlimited as to materials and not restricted to articles in chief value of metal. *Peter J. Schweitzer (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 285, T.D. 42872; *P. A. Straub & Co.* v. *United States*, 57 Treas. Dec. 452, T.D. 43925; *Paul O. Abbi (Inc.)* v. *United States*, 58 Treas. Dec. 367, T.D. 44297; *D. C. Andrews & Co. et al.* v. *United States*, 60 Treas. Dec. 1077, T.D. 45334.

In the *Straub* case, coffee machines, composed in chief value of decorated china, were held classifiable as machines under paragraph 372 of the Tariff Act of 1922. The court said (p. 453):

The term "machine" is a more specific designation when applied to the coffee machines in question than the phrase "articles and manufactures composed in chief value of china," and the machines classifiable under paragraph 372 are not limited to those in chief value of metal. * * *

However, merchandise may not be classified as machines, if it is more specifically provided for under some other provision of the tariff act. *Lador, Inc.* v. *United States*, 48 C.C.P.A. (Customs) 6, C.A.D. 753. Thus, if the tanks involved herein are in chief value of porcelain, they may be classifiable as porcelain sanitary ware under paragraph 212, *supra*, provided that provision is more specific than that for other machines, not specially provided for, under paragraph 372, *supra*.

Where merchandise is covered by competing paragraphs of the tariff act, the proper classification is under the paragraph which describes the item more specifically. *Sandoz Chemical Works, Inc.* v. *United States*, 43 C.C.P.A. (Customs) 152, 158, C.A.D. 623. An *eo nomine* designation is preferred to terms of general description and to enumerations which are broader in scope and less specific, unless a contrary legislative intent appears. *United States* v. *Astra Trading Corp.*, 44 C.C.P.A. (Customs) 8, 11, C.A.D. 627. A designation by use ordinarily prevails over a designation of general character without special limitation as to use or other qualification. *Drakenfeld & Co.* v. *United States*, 9 Ct. Cust. Appls. 124, T.D. 37979; *Sandoz Chemical Works, Inc.* v. *United States*, *supra*.

The provision in paragraph 372 for machines, not specially provided for, is a general provision not related to use and does not prevail over a designation by use. *Gallagher & Ascher Company* v. *United States*, 39 Cust. Ct. 1, C.D. 1892; *Sears, Roebuck and Co.* v. *United States*, 39 Cust. Ct. 5, C.D. 1893. An article designated *eo nomine*, such as a safety razor, which is a machine, is, nevertheless, classifiable under the *eo nomine* provision therefor, since that is a more specific designation. *Morris Friedman* v. *United States*, 40 Cust. Ct. 216, C.D. 1985.

Furthermore, the provision in paragraph 372 for other machines is qualified by a "not specially provided for" clause, whereas the provision for sanitary ware in paragraph 212, as modified, is not. Such a clause lessens the relative specificity of a provision where the competing provisions are equally applicable or where the merchandise is *eo nomine* provided for. *United States* v. *Garlock Packing Co.*, 32 C.C.P.A. (Customs) 79, C.A.D. 289. Even where the designation is by use, the presence of a "not specially provided for" clause results in the exclusion of articles enumerated elsewhere by a descriptive or *eo nomine* designation, provided such designation is more than an unlimited general description of the merchandise. *United States* v. *Lansen-Naeve Corp.*, 44 C.C.P.A. (Customs) 31, C.A.D. 632.

Applying these principles, we conclude that even though the tanks involved herein are machines, if they are in chief value of china, porcelain, or other vitrified ware, they are more specifically provided for under paragraph 212, as modified, as sanitary ware.

The invoices describe the merchandise as china or vitreous china water tanks, but plaintiffs have attempted to prove that they are in chief value of metal.

It is well settled that the proper method of determining the component material of chief value of an article is to ascertain the costs of the separate parts or component materials to the manufacturer at the time they are ready to be assembled or combined into the article. *United States* v. *Rice-Stix Dry Goods Co.*, 19 C.C.P.A. (Customs) 232, T.D. 45337; *United States* v. *Jovita Perez et al.*, 44 C.C.P.A. (Customs) 35, C.A.D. 633, and cases cited.

In the instant case, the witness did not give the costs of the separate parts to be manufacturer at the time they were ready to be assembled, but merely stated that there was a commercial value for the metal and the other materials and that the article was in chief value of metal, because the metals were higher priced and because the empty box had no commercial value. Such evidence is clearly insufficient to establish that metal was, in fact, the component material of chief value of the imported water tanks at the time the parts were assembled. *Bing & Co.'s Successors* v. *United States*, 3 Ct. Cust. Appls. 211, T.D. 32532; *United States* v. *Rice-Stix Dry Goods Co.*, *supra*.

It is fundamental in customs law that the importer has the burden of proving that the collector's classification is erroneous and that the claimed classification is correct. *Yardley & Co., Ltd., et al.* v. *United States*, 41 C.C.P.A. (Customs) 85, 87, C.A.D. 533; *United States* v. *G. Klein & Son*, 42 C.C.P.A. (Customs) 73, 76, C.A.D. 574. Where the collector's classification has been erroneously made, the legal presumption as to its correctness falls, but the importer still has the burden of showing a factual and legal situation which will enable the court to determine whether any of the claims in the protests

should be sustained. *United States* v. *Magnus, Mabee & Reynard, Inc.*, 39 C.C.P.A. (Customs) 1, 7, C.A.D. 455.

Whether or not the collector's classification in this case is erroneous, the plaintiffs have failed to establish that the component material of chief value of the merchandise is metal and not porcelain. Therefore, the court is unable to determine whether the claim made in the protests that the merchandise is properly dutiable as machines should be sustained.

On the record presented, the protests are overruled, and judgment will be rendered in favor of the defendant.