R. J. SAUNDERS & Co., INC. *v.* UNITED STATES    (No. 5092) *

United States Court of Customs and Patent Appeals, May 4, 1962

*(C.A.D. 801).

*Jordan & Klingaman* (*Edward F. Jordan*, of counsel) for appellant.

*William H. Orrick, Jr.*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section, for the United States.

[Oral argument February 7, 1962, by Mr. Jordan and Mr. FitzGibbon]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK [1]

RICH, Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, Second Division (C.D. 2274), overruling appellant's protests to the classification of merchandise invoiced as "SC 7759/08A— Double headed electric dry shavers."

The collector classified the merchandise as articles having as an essential feature an electric element or device under paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to GATT, T.D. 52739. The importer claims that the proper classification is as safety razors under paragraph 358 of said act, as modified by GATT, T.D. 51802. These statutory provisions read in part as follows:

Par. 353:

Articles having as an essential feature an electric element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

   \*         \*         \*         \*         \*         \*         \*

  Other \* \* \* _____ 13¾% ad val.

Par. 358:

Safety razors, and safety-razor handles and frames_____ 12½% ad val., but not less than 2½¢ each and 7½% ad val.

The case was submitted for decision on an agreed statement of facts, which reads in part as follows:

IT IS HEREBY STIPULATED AND AGREED by and between counsel for the parties hereto—

1—That the merchandise the subject of the above-entitled protest is described on the invoice as "SC 7759/08A—Double headed electric dry shavers" \* \* \* that the sample of the said electric dry shavers submitted herewith may be received in evidence and marked Exhibit 1; and that electric dry shavers were not produced or known in 1930 and prior thereto.

2—That the said electric dry shavers are used for shaving the beard and are operated by an electric motor enclosed in the casing; that they have two sets of blades and each set, consisting of six blades, is covered by a metal guard to prevent the skin from being cut during the shaving operation.

3—That, except as aforesaid, the said electric dry shavers are the same in the method of operation and in all other material respects as the non-electric dry shavers the subject of *Morris Friedman* v. *United States*, 40 Cust. Ct. 216, C.D.

---

[1] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28, United States Code.

1985; and that the record in the said C.D. 1985 may be incorporated in the record in the protest herein.

As indicated in the above stipulation, the parties are in agreement "that electric dry shavers were not produced or known in 1930 and prior thereto." The sole issue is whether appellant has established that the imported merchandise, a subsequently introduced manufacture known commercially as "electric dry shavers," should be classified, contrary to the collector's finding, as "safety razors."

It is settled that ▇ "tariff acts are intended to. bring within the purview of their provisions imported merchandise which is described therein, notwithstanding the fact that such merchandise, at the time of the law's enactment, was not known in our international commerce." *United States* v. *L. A. Salomon & Bros.*, 22 CCPA 490, T.D. 47483. As stated in *Newman* v. *Arthur*, 109 U.S. 132:

> The fact that at the date of the passage of the act goods of the kind in question had not been manufactured, cannot withdraw them from the class to which they belong, as described in the statute, where, as in the present case, the language fairly and clearly includes them.

We note, however, that it is also a settled principle that ▇ "the common or commercial meaning of an *eo nomine* designation in a tariff act must be determined as of the effective date of that act." *Wilbur-Ellis Co. et al.* v. *United States*, 18 CCPA 472, T.D. 44762. See also, *Rossman* v. *Hedden*, 145 U.S. 561.

Accordingly, we shall first consider the meaning of the eo nomine designation "safety razors" as of the effective date of the 1930 act. We shall then consider whether this meaning may be said "fairly and clearly" to include the electric dry shavers now before us, so that we can be reasonably sure of carrying out the intent of Congress, which is our primary responsibility.

### The Meaning of "Safety Razors" In The 1930 Tariff Act as Enacted

In determining the meaning of the term "safety razors" in the Tariff Act of 1930 at the time of its enactment, we note that this term first appeared in Title I, Section 1, paragraph 358 of H.R. 7456, which subsequently became the Tariff Act of 1922. Prior to that time, under the Tariff Act of 1913, safety razors were classified under the broad provision for razors in paragraph 128 of that act.[2] Also, prior to the enactment of the Tariff Act of 1922, the importation of safety razors was limited by reason of patent rights on such razors owned by the Gillette Safety Razor Company. At the Hearings before the House Ways and Means Committee, on General Tariff Revision,[3] the brief of the Gillette Safety Razor Company discussed the "very large"

---

[2] See Tariff Comm'n Report, Tariff Information Surveys C–13 at 46 (1921).

[3] 66th Cong., 3rd Sess., Part II at 828 (1921).

effect that the expiration of the Gillette patent rights would have on "the importation of safety razors and blades similar to ours [Gillette's]." Since the Gillette Company had a virtual monopoly on the safety razor industry at that time, and could be expected, because of its leadership in the safety razor industry, to be the primary party affected by safety razor tariff legislation, it is clear to us that the specific provisions for safety razors and blades in the 1922 act were inserted mainly to protect the American industry producing razors and blades similar in structure and operation to that originally produced by the Gillette Company, a structure so well-known that we can take judicial notice of it. Such razors consisted then, and basically still do, of a blade which is a "thin plate, ground on one or both edges * * * the shaving edge [of which] is much shorter than that of the straight blade [i.e., the blade of the "old-fashioned straight razor"]." [4] The razors were called safety razors because the blades were so mounted on a razor body and so related to an outwardly protruding guard underlying the blade that (1) the amount of physical contact of the blade with respect to the skin was held to a safe minimum, and (2) the blade could cut only when it was at such a small angle to the subject's skin that there was very slight danger of injury to the skin when the razor was moved approximately perpendicular to the cutting edge of the thin, plate blade.

The Tariff Act of 1930 reenacted, in present paragraph 358, the identical safety razor provision of the 1922 act, except for a lowering of the duty on unfinished safety razor blades. The briefs submitted by the safety razor industry, contained in the Congressional hearings, prior to the enactment of the Tariff Act of 1930 were directed toward attempting to reinstate the duty on unfinished safety razor blades that existed in the 1922 act.[5] There is no evidence in these hearings that Congress intended to protect any other industry than the very same safety razor industry considered by it when the 1922 act was promulgated.

### Do the Words "Safety Razor" "Fairly and Clearly" Include Electric Dry Shavers?

Appellant attempts to show that electric dry shavers are, in fact, "fairly and clearly" included within the term "safety razor" by setting forth in its brief various definitions of the words "razor" and "safety razor." We agree with appellant that its definitions do show that the imported "electric dry shavers" are used, as are razors, " 'for *shav-*

---

[4] Op. Cit. supra, note 1, at 44.

[5] See, e.g., Hearings Before the Senate Finance Committee on H.R. 2667, 71st Cong., 1st Sess., Vol. III,, at 530–531 (1929) ; Hearings Before House Ways and Means Committee on Tariff Readjustment, 70th Cong., 2d Sess., Vol. III, at 2223–2238 (1929).

*ing* off the beard' and have 'guards for the blade(s) to prevent cutting the skin' during the *shaving* operation," as do safety razors. (Emphasis added.) We find, however, that such characterizations, though true, merely establish that "safety razors" and "electric dry shavers" are both "shavers." Such a premise, however, does not compel the conclusion that "electric dry shavers" are "razors." To take an extreme example, appellant defines a "razor," inter alia, as "a cutting implement for shaving off the beard or hair." We note, however, that a "shaver" may be defined as "that which shaves," i.e., that which removes "hair from (the face, legs, etc.) by cutting it close to the skin." [6] Clearly, a razor is a shaver—but by such a definition so is an ordinary pair of scissors.[7] To say that a razor and a pair of scissors (or an electric dry shaver which employs the same shearing action) are both razors because both are shavers is as logically untenable as concluding that since both roses and violets are flowers, violets are roses. The error in appellant's argument resides in the fact that they do not in any way relate "razors" or "safety razors" to electric dry shavers. The fact that has been overlooked is that the terms "safety razors" and "razors" do not collectively include all "shavers." Therefore, that which shaves is not necessarily a "razor."

Finding the record and contemporary dictionaries silent on the relationship between "safety razors" and "electric dry shavers," we shall now look at the imported articles themselves to see if they are "fairly and clearly" designated by the words "safety razors," which appear in paragraph 358.

In operation and appearance, the imported "Norelco" electric dry shavers are vastly different from the safety razors known in 1930. The two rotary, motor-driven blades of the imported shavers each have six cutting edges about $\frac{1}{16}''$ wide and arranged in a circle. These blades do not contact the skin directly but run in frictional engagement with two circular perforated "guards" which completely overlie their respective rotary blades. As the shaver is passed over the skin, individual hairs protrude through these perforations. Each such hair is cut by the shearing, scissor-like action that takes place when it is pinched between a cutting edge of a blade and the edge of the perforation in the guard through which the hair extends. No such pinching of hairs between two metallic edges with resultant shearing, scissor-like cutting occurs in the operation of a "razor" blade.

In operation and structure, therefore, we find that electric dry shavers may not "fairly and clearly" be included in the term "safety razors," as we find Congress used that term.

---

[6] American College Dictionary (1961), "shave," meaning "2."
[7] Scissors in the Tariff Act of 1930 are classified in paragraph 357.

We note, in passing, the 1948 Summaries of Tariff Information, Volume 3, where the following comments appear, which are not inconsistent with the conclusion we have reached:

At page 87:

MACHINES WITH ESSENTIAL ELECTRICAL ELEMENTS, AND PARTS
(Par. 353)
Comment

\*　　\*　　\*　　\*　　\*　　\*　　\*

Among the more important articles *covered* by this summary are \* \* \* *electric shavers* \* \* \*.　[Emphasis added.]

At page 165:

SAFETY RAZORS, HANDLES, FRAMES, AND BLADES
(Par. 358)

\*　　\*　　\*　　\*　　\*　　\*　　\*

Comment

\*　　\*　　\*　　\*　　\*　　\*　　\*

*Not covered* in this summary are \* \* \* *electric shavers* (see summary on machines with electrical elements, par. 353) \* \* \*.　[Emphasis added.]

In view of our conclusion that electric dry shavers are not properly classifiable under the eo nomine provision in paragraph 358 for safety razors, we do not find it necessary, as did the court below, to consider the case of *United States* v. *Electrolux Corporation*, 46 CCPA 143, C.A.D. 718.

The judgment of the Customs Court is *affirmed*.

MARTIN, J., sat but did not participate because of illness.