(C.D. 3759)

PICO NOVELTY CO., INC., ET AL v. UNITED STATES

United States Customs Court, First Division

(Decided April 2, 1969)

*Glad & Tuttle* (*Robert G. White* and *George R. Tuttle* of counsel) for the plaintiffs.

*William D. Ruckelshaus*, Assistant Attorney General (*S. William Barr, Arthur H. Steinberg*, and *Steven R. Sosnov*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: These cases, which were consolidated for trial, involve articles imported from Japan which were described on the invoices as dangling fur monkeys or jumping fur monkeys. The articles consist of monkey-like figures varying in length from seven to nine inches. The face of each figure resembles (roughly) the face of a monkey and is composed of a painted or colored material that appears to be either plastic or rubber. The hands and feet are made of pink or beige cotton or felt. The balance of the outer portion is composed of a material that appears to be fur, and has a red or pink ribbon around the neck. The inner portion of the smaller figure consists of a wooden cylinder to give shape to the body and attached wires to give shape to the arms and legs. The inner body portion of the larger figure appears to consist of a cardboard shape stuffed with cotton or wood shavings and gravel—to which shape, arms and legs—also formed of cardboard—are connected by wire. A short elastic band is attached to the head of each figure and to two strings which are tied to the hands and feet. When the elastic band is agitated, the figure jumps or bounces up and down in monkey-like fashion.

The articles were classified by the collector of customs as toys under paragraph 1513 of the Tariff Act of 1930, as modified, T.D. 52739, and assessed with duty at 35 percent ad valorem.[1] Plaintiffs challenge this classification claiming that the importations are properly classifiable under paragraph 1519(e) of the Tariff Act of 1930, as modified, T.D. 55816, as articles in chief value of fur, dutiable at only 17 percent ad valorem.[2] We hold that plaintiffs have failed to prove the correctness of their affirmative claim that the articles are in chief value of fur—and therefore overrule the protests.[3]

We start with the basic consideration that in a classification case the claimant must not only prove that the collector's classification was erroneous, he must also establish the correctness of his own affirmative claim. E.g., *Rausch v. United States*, 60 Cust. Ct. 654, 657, C.D. 3487,

---

[1] Paragraph 1513, as modified, reads:
Toys, not specially provided for:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Other (except * * *)_____ 35% ad val.

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

\* \* \* As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. \* \* \*

[2] Paragraph 1519(e), as modified, provides:
Articles, wholly or partly manufactured (including fur collars, fur cuffs, and fur trimmings), wholly or in chief value of fur (except silver or black fox), not specially provided for:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Other _____ 17% ad val.

[3] In view of this holding, it is unecessary to reach the question—which was the subject of extensive testimony at trial—as to whether or not the imported articles were chiefly used for the amusement of children.

286 F. Supp. 576, 578 (1968), and cases cited. For as we pointed out in *Davies, Turner & Co.* v. *United States*, 61 Cust. Ct. 311, 313, C.D. 3621, 292 F. Supp. 722, 723 (1968): "[A]n action to recover on a claim for refund of customs duties—like an action to recover on a claim for refund of internal revenue taxes—'is in the nature of an action for money had and received, and it is incumbent upon the claimant to show that the United States has money which belongs to him.' "

Equally well-established is the principle that the proper method of determining component material of chief value is to ascertain the costs to the manufacturer of the separate parts of the article at the time they are ready to be combined into the completed article. E.g., *United States* v. *Bacharach*, 18 CCPA 353, 355, T.D. 44612 (1931); *United States* v. *Rice-Stix Dry Goods Co.*, 19 CCPA 232, 234, T.D. 45337 (1931); *Commercial Adolfo S. Pagan, Inc.* v. *United States*, 48 Cust. Ct. 210, 216, C.D. 2337 (1962); *Ross Products, Inc.* v. *United States*, 52 Cust. Ct. 51, 55, C.D. 2435 (1964); *Remco Industries, Inc.* v. *United States*, 60 Cust. Ct. 565, 572, C.D. 3460, 285 F. Supp. 117, 121–22 (1968); *Rausch* v. *United States, supra*, 286 F. Supp. at 579.

Against this background, plaintiffs have presented no evidence whatever as to the costs to the manufacturer of the separate parts of the article at the time they were ready to be assembled and combined into the completed article. Nor do we have here a situation like that in *John S. Connor, Inc.* v. *United States*, 54 Cust. Ct. 213, 217–18, C.D. 2536 (1965), where the court held that it was "not necessary to offer evidence of comparative costs to prove what component material is of chief value when the most casual examination of the article shows that only one material can be." For here, examination of the samples shows that the various components of the imported article are far more than *de minimis* vis-a-vis each other and the finished article. Indeed, the presence of a not insubstantial amount of plastic or rubber material in the face, as well as unknown amounts of non-fur materials in the interior and exterior of the figures, renders the samples unsuitable as a competent source on the value issue. See *Wilson's Customs Clearance, Inc.* v. *United States*, 59 Cust. Ct. 36, 41, C.D. 3061 (1967).

Plaintiffs insist, however, that they have established that fur is the component material of chief value on the basis of the testimony of an importer of a similar item who had gone to Japan on several occasions to negotiate with the manufacturer of that item with regard to its composition, the price of the component parts, and the price of the complete article. The crucial part of his testimony was as follows (R. 134):

> Q. Is there any one material, as far as the monkeys are concerned, which more or less controls what the price is?—A. To my knowledge——

Q. Yes or no?—A. Yes.

Q. What is that' material?—A. I believe the fur is the major factor within that item, fur and labor, I should say.

This testimony, however, falls far short of establishing that fur is the component material of chief value. First, the testimony is not only conclusory (see e.g., *Brooks Paper Company* v. *United States*, 40 CCPA 38, 45, C.A.D. 495 (1952), it is also so vague and indefinite as to be entitled to little probative weight. In fact, the witness was not even able on cross-examination to recall the Japanese manufacturers with whom his company dealt. (R. 140–41) Further, the witness' statement about the cost of labor does not necessarily relate to the non-includible cost of assembling the various materials. The statement may well relate to the cost for the labor performed on the individual component materials prior to assembly into the complete article— which cost is, of course, considered to be part of the component's value. E.g., *Swiss Manufactures Association, Inc.* v. *United States*, 39 Cust. Ct. 227, 233, C.D. 1933 (1957), appeal dismissed 45 CCPA 129 (1958). In this connection, moreover, the record is silent (i) as to what the manufacturers who supplied the witness' company do to the components; (ii) as to what stage of manufacture these components are in, when purchased; and (iii) whether different manufacturers (including those who supplied the plaintiffs in this case) use different methods. All these considerations have a direct bearing in the computation of component material of chief value.

The protests are overruled. Judgment will be entered accordingly.