(C.D. 4211)

Bradlow, Inc. *v.* United States

United States Customs Court, First Division

(Decided May 5, 1971)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiff.
*L. Patrick Gray, III,* Assistant Attorney General (*Morris Braverman* and *Michael M. Hunter,* trial attorneys), for the defendant

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: The importations involved in this case—which were manufactured in Japan and entered at the port of Los Angeles—were invoiced as key holders.[1] Each consists of a flat metal disk approximately 1½ inches in diameter and slightly less than ¼ inch in thickness. Attached to each side of the disk is a thin circular plate containing an advertising message. A groove or slot circumscribes the edge of the metal disk and six swivel hooks are attached to the disk within the groove. A clasp hook is attached to each of the swivel hooks.

Upon importation, the key holders were classified by the government under item 740.35 which covers "[j]ewelry and other objects of personal adornment * * * [v]alued over 20 cents but not over $5 per dozen pieces * * " and assessed duty at the rate of 55 percent. Plaintiff challenges this classification and contends that the imports are properly classifiable according to their component material of chief value, which is claimed to be brass. Consequently, they are claimed to be properly dutiable at 15 percent plus 1.275 cents per pound under item 657.35 which covers articles of copper, not coated or plated with precious metal.[2] In the alternative, plaintiff claims the articles are dutiable at the rate of 19 percent under item 657.20 as articles of iron or steel.

It is, of course, basic that in a classification case the claimant must not only prove that the collector's classification was erroneous, he must also establish the correctness of his own affirmative claim. E.g., *Pico Novelty Co., Inc.* v. *United States*, 62 Cust. Ct. 341, 342, C.D. 3759

---

[1] The importation was liquidated less than 60 days after appraisement. However, since no appeal for reappraisement was filed within the statutory period, the liquidation, in our view, remained valid. See *John V. Carr & Son, Inc.* v. *United States*, 63 Cust. Ct. 316, C.D. 4209 (1971). Cf. — *Pistorino & Co., Inc.* v. *United States*, 65 Cust. Ct. C.D 4110 (1970).

[2] The pertinent provisions concerning this claim by plaintiff are as follows:
Subpart C, Part 2, Schedule 6, TSUS:

\* \* \* \* \* \* \*

2. For the purposes of the tariff schedules, the following terms have the meanings indicated:

\* \* \* \* \* \* \*

(ii) brass is an alloy of copper (not including nickel silver) in which zinc is the principal alloying element, with or without small quantities of other elements;

\* \* \* \* \* \* \*

In the absence of context which requires otherwise, the term "copper", wherever used in the tariff schedules, includes alloys of copper.

\* \* \* \* \* \* \*

Subpart G, Part 3, Schedule 6, TSUS:

| Articles of copper, not coated or plated with precious metal: | |
|---|---|
| 657.30 Of copper other than alloys of copper; of nickel silver or of cupro-nickel | \* \* \* |
| 657.35 Other | 1. 275¢ per lb. +15% ad val. |

(1969). In the present case, we need not consider whether or not the classification is erroneous. For on the record before us, it is apparent that plaintiff has failed to establish the correctness of its claimed classification under item 657.35 or item 657.20.

The proper method of determining component material of chief value is to ascertain the costs to the manufacturer of the separate parts of the article at the time they are ready to be combined into the completed article. E.g., *Plastic Service Co.* v. *United States*, 63 Cust. Ct. 528, 530, C.D. 3947 (1969), and cases cited. In the present case, plaintiff has presented no evidence as to the costs to the manufacturer of the separate parts of the imported article at the time they were ready to be assembled and combined into the completed article. Instead, plaintiff presented testimony by its president to the effect that he had visited the factory where the imported articles were manufactured; that he had seen the articles being manufactured; that he himself was in the business of manufacturing similar articles; and that he was not a metallurgist. The witness further testified that the importation is made of brass except for (i) the article's chrome plating; (ii) the ring swivel on the ring portion; and (iii) the advertising plate.

The basis for the witness' conclusion that the basic component of the article was brass was that the color of the metal upon scraping the chrome away from the disk—which the witness did—was yellow and the only metals which the witness knew to be yellow were brass and gold. The witness eliminated the possibility that the import was made of gold on the ground that "[i]t would be impossible at the price."

The witness further testified that he had seen the factory using brass to manufacture the imported articles; that he himself had contracted to have various items chrome plated; and that currently he has items chrome plated in Japan. The cost of chrome plating, he stated, is relatively insignificant in comparison to the cost of the brass. Finally, the witness testified that he believed the article in issue "may be alloy brass" but thought that brass itself is not an alloy..

For the reasons that follow, we must conclude that this testimony is insufficient to establish that the key holders were in chief value of brass. In the first place, it is clear from the record that the witness' knowledge of metals was quite limited. This is indicated for one thing by his testimony that he did not think that brass was an alloy. A person with even a slight familiarity with metals could be expected to know that brass is an alloy consisting essentially of copper and zinc in various proportions. See e.g., *Webster's New International Dictionary* (Second Edition, Unabridged) ; 4 *Encyclopaedia Britannica*, p. 108 (1970). Further demonstrating the witness' limited knowledge of metals was his testimony as to brass being yellow in color. Actually

brass ranges in color from that of pure copper through yellow to dull white, depending upon the proportions of copper and zinc composing the specific piece of brass. *Encyclopaedia Britannica, id.* at 109. In light of the witness' limited knowledge of brass and other metals, his broad conclusory statement that the import is in chief value of brass is entitled to little probative weight, particularly when the statement is "assessed in practical terms, considering such factors as completeness, adequacy of bases, and possible motives to deceive." *Mannesmann-Meer, Inc.* v. *United States*, 58 CCPA 6, 8, C.A.D. 995 (1970). See also e.g., *Plastic Service Co.* v. *United States, supra*, 63 Cust. Ct. at 529–30.

It is true that "[i]t is not necessary to offer evidence of comparative costs to prove what component material is of chief value when the most casual examination of the article shows that only one material can be." *John S. Connor, Inc.* v. *United States*, 54 Cust. Ct. 213, 218, C.D. 2536 (1965). However, a casual examination of the imported key holder does not reveal the component material of chief value. The disk, swivels and hooks of the importation are all silver in color, except where scraped by plaintiff's witness to expose a yellow-colored metal under the silver-colored plating on the disk. Moreover, the metal plates attached to the sides of the disk contain multi-colored advertising messages which the witness testified were "engraved" messages. It is not apparent from a casual examination what the component material of these plates actually is, and no testimony or other evidence was presented at trial concerning the value of such plates or the engraved advertising messages.

We are mindful, too, that this court has held that if plaintiff's counsel develops the facts to show component material of chief value *prima facie* with a broad conclusory statement by a witness who should know and counsel for defendant interposes no objection to the competency of that testimony or fails to cross-examine on the issue, such "[o]mission to do either would connote a willingness that component material of chief value might be decided on the basis of the *prima facie* showing and if nothing further transpired would for practical purposes be tantamount to a stipulation." *Chas. Kurz Co.* v. *United States*, 57 Cust. Ct. 73, 79, C.D. 2733 (1966). See also concurring opinion in *Romicks International, Inc.* v. *United States*, 64 Cust. Ct. 316, 322, C.D. 3997 (1970). But even applying the *Kurz* rationale, no such stipulation can be inferred here. For here defendant's counsel (1) interposed vigorous objections to the competency of the witness' testimony as to chief value on the basis that the witness was not qualified to testify on that aspect; and (2) developed by cross-

examination that the witness had only limited familiarity with brass and other metals.

We turn now to plaintiff's claim in the alternative that the key holders should have been classified under item 657.20 as articles of iron or steel. However, absolutely no evidence was produced at trial that the imported items were composed chiefly in value or weight, or even in slightest part, of iron or steel. Thus, this claim must fail for complete absence of proof.

The protest is overruled. Judgment will be entered accordingly.