BEFORE THE FIRST DIVISION, MAY 18, 1950

**No. 54329.**—Alfred Dunhill of London, Inc. *v.* United States, protest 142105–K (New York).

OLIVER, Chief Judge: The merchandise involved in the protest at bar consists of certain carbon cutters made of metal. They were classified as "articles designed

to be carried on or about or attached to the person" and duty assessed at the combined rate of 65 per centum ad valorem under paragraph 1527 (c) (2), Tariff Act of 1930, as modified by the trade agreement with France, T. D. 48316. The plaintiff claims the involved articles dutiable as "all smokers' articles whatsoever, * * * not specially provided for" at the rate of 60 per centum ad valorem under paragraph 1552 of the same act.

The pertinent provisions of paragraph 1527 (c) (2), as modified by T. D. 48316, read as follows:

PAR. 1527. (c) Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, * * * collar, cuff, and dress buttons, combs, match boxes, mesh bags, and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch bracelets, and like articles; all the foregoing and parts thereof, finished or unfinished:

 * * * * * * *

(2) Composed wholly or in chief value of metal * * * and valued above $5 per dozen pieces, ⅔¢ each and ⅖¢ per doz. for each 1¢ the value exceeds 20¢ per doz. and 25% ad val.

Paragraph 1552 provides in part as follows:

Pipes and smokers' articles: * * *; and all smokers' articles whatsoever, and parts thereof, finished or unfinished, not specially provided for, of whatever material composed, * * *, 60 per centum ad valorem; * * *.

A sample of the merchandise, consisting of the metal carbon cutter, a leather case, and a printed sheet of instructions, was received in evidence as plaintiff's collective exhibit 1. This cutter is used to remove the carbon deposit in the bowl of a tobacco pipe. It is made of metal, shaped like the letter "T." It measures about 2¼″ in length, about 1¼″ across the top, about ⅝″ at the widest part of the stem, and is about ³⁄₁₆″ in thickness. The stem or cutter is inserted into the bowl of the pipe, and a knurled knob in the crosspiece or handle is rotated to expand the blades in the stem to a diameter sufficient to meet the carbon in the pipe. The cutter is then rotated and the blades cut away caked carbon in the pipe bowl.

In the course of the trial two samples of pipe-cleaning articles were introduced in evidence as illustrative exhibits 2 and 3. Both of these articles are encased in metal tubes, measuring in one case approximately ³⁄₁₆″ in diameter and 2³⁄₁₆″ in length (illustrative exhibit 3). The second sample measures approximately ⁵⁄₁₆″ in diameter and 3″ in length (illustrative exhibit 2). Both of these illustrative exhibits have one end broadened to be used to tamp the tobacco in the pipe, and illustrative exhibit 3 has a ring on one end of the tube. Both of these articles are capable of being folded and inserted in their respective metal tubes when not in use. When removed from the metal tube, illustrative exhibit 3 discloses a sharp-pointed instrument, used for loosening unsmoked, caked tobacco and ashes from the bottom of the bowl after smoking and a spoon-shaped instrument presumably used for the cleaning of the pipe. Illustrative exhibit 2, when removed from the metal tube container, discloses a sharp-pointed blade and a beveled knife-like blade or scraper.

Plaintiff's sole witness has been employed by it for about 25 years. He said he was familiar with the use of articles similar to the carbon cutters before us (collective exhibit 1). Although he had never seen an article identical to this cutter until the present importation, he had seen like articles demonstrated by salesmen and testified that they were inserted in the bowl of the pipe and screwed around to remove the carbon from the pipe. He further stated that he had seen people use them and had used one himself. He stated that it was only necessary to use it every 6 or 8 weeks or "only when the pipe becomes caked with carbon." When not in use, he stated that he had kept his cutter in a drawer and that the

sole function of the leather wallet or case in which it was sold was to protect other articles from the dirty carbon which might adhere to the cutter after use. He had personally never carried this cutter on his person nor had he seen anyone else so carry it. He described the use of illustrative exhibits 2 and 3, with which he was familiar, stating that they were used for tamping the tobacco into a pipe and for removing some of the carbon and loosening the ashes and unconsumed tobacco in the bowl of the pipe.

On redirect examination the witness stated that while illustrative exhibits 2 and 3 were meant to be carried on or about the person, collective exhibit 1, in his opinion, was not; that the purpose of the two little utensils in illustrative exhibit 3 is to loosen up and clean out the dottle or ashes and the unsmoked tobacco before filling a pipe "so that for a pipe smoker an article like Exhibit 3 would be used constantly every time he smoked a pipe" (R. 19). The witness further testified that the function of illustrative exhibit 2 was similar to that of illustrative exhibit 3. He further stated that while he had never seen anyone carry the imported carbon cutters on their person, illustrative exhibits 2 and 3 could be carried around and actually were carried on the person; that the imported cutters could be carried around on the person, but a man "would be very foolish to fill his pockets with things that he had to use once in every two months." (R. 23.)

A printed sheet of instructions contained in collective exhibit 1 states: "After use expand Scraper to fullest extent and carefully remove any particles of carbon grit lodging in crevices before closing Scraper (turning nut anti-clockwise) and returning it to the wallet." The witness stated that occasionally he placed the carbon cutter back in the leather case when he had the case but that he did not consider it sufficiently important to return the article to the wallet or leather case as called for in the printed instructions contained in collective exhibit 1.

Our appellate court in *United States* v. *Kress*, 13 Ct. Cust. Appls. 66, T. D. 40885, had before it merchandise consisting of metal key rings. It held them not classifiable under the correlative provision in paragraph 1428, Tariff Act of 1922, as contended by the Government, because they were not specially designed to be worn or carried on the person. The court therein held that the involved key rings were carried on or about or attached to the person but that they did not belong to the class of typical articles which came within the provision in question. The court therein stated (p. 68):

* * * If in shape, size, or make up an article is unsuitable to be carried on or about or attached to the person, it is not within the meaning of the provision although designated therein by name: Consequently large metal coin holders, combs, match boxes, chains, and cigar cutters which might be carried on or about or attached to the person, but are unsuitable to be so carried as articles of *personal* comfort or convenience, are excluded from the provision hereinbefore quoted, notwithstanding their *eo nomine* enumeration therein. [Italics quoted.]

No article in chief value of metal, even if it be suitable to be carried on or about or attached to the person, is subject to the provisions upon which the Government relies if it is designed to be used and is made for use when not so carried. Normal size button hooks, tweezers, manicuring instruments, bottle openers, collapsible drinking cups, smelling-salts flasks in chief value of metal, keys to drawers, desks, trunks, and suit cases may be and are often carried on or about or attached to the person, nevertheless, as they are not designed for that purpose and as they are manufactured for use when not so carried, they are not within the meaning of the provision under consideration. *Rumpp & Sons* v. *United States*, 7 Ct. Cust. Appls. 203, 206–209, T. D. 36507.

We are of opinion that the plaintiff has overcome the presumption of correctness attaching to the classification of the collector. Samples are potent witnesses. While these carbon cutters could be carried on the person they would be bulky and as they are used infrequently (about once in 6 weeks), there would be no cogent reason for their being so kept constantly available on the person. On the other hand, illustrative exhibits 2 and 3 are very compact and their use would be

indicated each time their owner used a pipe. The cigar cutters and cigar lighters named in paragraph 1527 (c) are also used whenever the owner smokes. We find the carbon cutters before us not to be "like articles" to those named in paragraph 1527 (c).

For the reasons set forth herein and upon the record before us, we hold these carbon cutters properly dutiable under the provision in pargraph 1552 of the Tariff Act of 1930 for "all smokers' articles whatsoever, * * * not specially provided for" at the rate of 60 per centum ad valorem, as claimed.

The protest is sustained. Judgment will issue accordingly.