(C. D. 1486)

ROGERS IMPORTS, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided December 17, 1952)

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before OLIVER and MOLLISON, Judges

OLIVER, Chief Judge: This case concerns the classification of pipe cleaners. Although all of the articles were classified under the provision for "Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person," different rates of duty were applied because of the different dates when the entries in question were made. The merchandise covered by protest 141363–K, which was entered for consumption in August 1947, was assessed at combined rates of duty equivalent to 110 per centum ad valorem under paragraph 1527 (c) of the Tariff Act of 1930. The articles covered by protests 157000–K and 163732–K were entered in 1949 and, accordingly, assessed at combined rates equivalent to 65 per centum ad valorem under paragraph 1527 (c), Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, supplemented by Presidential proclamation, T. D. 51898. The statutory language of both paragraphs, so far as the present issue is concerned, is identical. The pertinent part of paragraph 1527 (c), as originally enacted, is quoted:

Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch bracelets, and like articles; all the foregoing and parts thereof, finished or unfinished:

Plaintiff claims that the merchandise is properly classifiable as smokers' articles, not specially provided for, under paragraph 1552, Tariff Act of 1930, with duty assessment at the rate of 60 per centum ad valorem as to the merchandise covered by protest 141363–K, and under said paragraph, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, carrying a dutiable rate of 30 per centum as to the articles covered by protests 157000–K and 163732–K.

In addition to the testimony of three witnesses—two of whom appeared on behalf of plaintiff and one for defendant—there were also received in evidence samples of the imported merchandise. The record supports the following summation.

The vice president of the plaintiff corporation, a manufacturer and an importer of smokers' articles and accessories, identified samples of the present merchandise. Plaintiff's exhibit 1, which is representative of the item described as "Pipe Companions of steel, Rogers," number 987, on the invoice covered by protest 141363–K, is an article made up of three individual parts, hinged together and collapsible, permitting all to be enclosed in an ornamental metal tube, slightly over 3 inches in length and approximately five-sixteenths of 1 inch in diameter. The entirety forms a compact arrangement, indicative of convenience in carrying. Explaining the different parts comprising the said exhibit, the witness stated that the slot at one end of the tubular cover serves as a holder for the blade, approximately 3 inches in length, with the tube thus becoming the handle for the knife used in scraping carbon from the bowl of a pipe. The thin piece of steel, or so-called "nail," about 2¾ inches in length, is used for cleaning the shank of a pipe. The third metal piece, approximately 3 inches in length, has a circular head, about ½ inch in diameter, that is intended to be and is called by the trade "a tamper," to tamp tobacco in a pipe, but the witness stated it is "too small" for such use, and "actually is used to close up the entire item."

Plaintiff's exhibit 2, which is representative of the item described as "Pipe Cleaners of steel," number 1741, on the invoice covered by protest 163732–K, consists of three metal pieces, each of a peculiar shape adaptable for pipe cleaning, i. e., the spoon-shaped blade for the heel, the nailhead or "spike" for the shank, and the button to serve as a tamper. Plaintiff's exhibit 3, characterized as a "pipe reamer," is substantially the same as said exhibit 2.

The witness testified that he has been dealing in smokers' articles and engaged in the pipe business for 26 years, during which time he has made a study of the habits of pipe smokers. He characterized the articles in question as "pipe tools," which he has seen mostly in offices or in people's homes, usually where there is a receptacle or waste basket to receive the carbon or sludge removed in cleaning a pipe. He stated that he has "very seldom" seen a man take one out of his pocket and use it, although he admitted that he was unable to tell whether people had such articles in their possession.

The testimony of plaintiff's other witness, a salesman with 16 years' experience in selling smokers' accessories and pipes, is corroborative of that previously offered, so there is no reason for a detailed review thereof.

Defendant's witness, who has been engaged for 40 years in the manufacture of smokers' articles and cigar lighters, stated that he advertises merchandise like that in question as "three-in-one, tamper, shank cleaner and reamer"; that exhibits 1, 2, and 3 are items essential for cleaning a pipe; that he has observed such articles "hundreds of times" being used "on the street, in my office; everywhere," and chiefly by "people who carry it on the person." After identifying a collection of articles, defendant's collective illustrative exhibit B, as "pipe companions," substantially the same as the articles in question and like products manufactured and imported by him, the witness testified that such merchandise was made to be carried on or about the person, and that the majority of people whom he has seen with them have carried those articles on their person.

The statutory language, hereinabove quoted from paragraph 1527 (c), *supra*, is a re-enactment of identical phraseology that appeared in prior tariff acts (paragraph 356 of the Tariff Act of 1913 and paragraph 1428 of the Tariff Act of 1922). The provisions thereof have been the subject of much customs litigation. In the case of *Gallagher & Ascher et al.* v. *United States*, 6 Ct. Cust. Appls. 105, T. D. 35343, which arose under the Tariff Act of 1913, the court, referring to the said language, set forth the following judicial interpretation:

\* \* \* By that provision a duty is imposed upon articles of a certain value composed of metal, which are designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, etc. The controlling question in this provision, outside of the question of value and material, seems to be whether the articles in question are designed to be worn on apparel or carried on or about or attached to the person in the same manner as are the enumerated articles and like articles when in their customary use. If the assessed articles do not resemble the enumerated ones in that particular, then they would not fall within the present provision, whatever might be their resemblance to the exemplar articles or some of them in any other particular. On the other hand, if the assessed articles are similar to the prescribed exemplars in respect to the manner in which they are worn or customarily carried upon the person, then the resemblance is sufficient to satisfy the terms of the provision. The rule of *ejusdem generis* is thus limited by the paragraph to the *single controlling* resemblance just defined.

It may be observed that the articles which are enumerated in the disputed provision are numerous and in some respects diverse. Some of them are wholly ornamental in character, for example, "vanity cases" and "millinery ornaments"; some are wholly utilitarian, for example, "cigar cutters" and "match boxes"; some may be both ornamental and useful, for example, "chains" and "cuff buttons." In one particular, however, they are all alike, and that is that in their customary use they are all carried upon the person of the user, not for warmth or protection like clothing, but rather as incidental articles of mere personal comfort, convenience, or adornment. This characteristic belongs also to the metal pencils now in question, and brings them within the provision for "like articles," which follows the list of enumerated articles in the paragraph.

In the later case of *United States* v. *Horstmann Co.*, 14 Ct. Cust. Appls. 443, T. D. 42079, which arose under the Tariff Act of 1922, the court emphasized the scope of the statutory language under discussion. After referring to earlier cases, including the *Gallagher & Ascher et al.* case, *supra*, the court said:

It will be observed by a careful review of the cases cited, that one of the fundamental requisites for classification under the provisions of paragraph 1428 in question, of articles not *eo nomine* provided for, is that such articles must be designed to be worn on apparel or carried on or about or attached to the person as *"incidental* articles of *mere personal comfort, convenience, or adornment."* (Italics not quoted.) Such articles may be of utility or of adornment, or they may possess both of these qualities; but, unless they are designed to be worn or carried, or attached to the person for mere personal comfort, convenience, or adornment, they can not be classified under the provisions in question.

It is true that these decisions relate to articles not enumerated in the paragraph by name. However, it was there definitely pointed out that articles not enumerated by name must, in order to be classifiable thereunder, be like those enumerated; and, in order to be like such articles, they must be "incidental articles of *mere personal comfort, convenience, or adornment."* (Italics not quoted.) If articles not provided for by name must answer to the description of "incidental articles of mere personal comfort, convenience, or adornment," in order to be like those *eo nomine* provided for, it follows that those intended to be included within the *eo nomine* provisions are of that character. Accordingly, articles not of that character were not intended to be covered by the provisions in question even though they respond generally to *eo nomine* designations therein. [All italics quoted in decision.]

Under the cited cases, the merchandise in question is clearly within the provisions of paragraph 1527 (c), *supra*, invoked by the collector. An examination of the samples, said exhibits 1, 2, and 3, discloses that these articles have been produced as a convenience for pipe smokers. The different parts of each have been assembled or connected in such a manner as to be in most compact form when not in use. Their appearance reveals a definite purpose of being particularly arranged for carrying on the person, a disclosure that finds support in defendant's testimony to the effect that these pipe-cleaning accessories are specially made to be carried on the person. Plaintiff's testimony is not persuasive toward disturbing those findings.

The case of *Weyenberg Shoe Mfg. Co.* v. *United States*, 38 C. C. P. A. (Customs) 122, C. A. D. 448, cited by plaintiff, is distinguishable. That case concerned buckles exclusively used in the manufacture of military-type oxford shoes for officers and noncommissioned men in the armed forces of the United States and were also sold and used by civilians who desired such kind of shoes. The court held such articles to be removed from the provisions of paragraph 1527 (c) because they were not such "incidental articles of mere personal comfort, convenience, or adornment" as are contemplated by the said paragraph. The same statement cannot be applied to the

articles under consideration. Here, the merchandise consists of articles of utility, designed to be carried on the person as incidental articles of mere personal comfort or convenience.

The protests are overruled and the decision of the collector is affirmed. Judgment will be rendered accordingly.