**HOUSEHOLD MFG. CO., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**C.D. 3729; Protests 67/3112–87010, 67/3114–87060.**

United States Customs Court
Second Division.
March 4, 1969.

Stein & Shostak, Los Angeles, Cal. (S. Richard Shostak and Marjorie M. Shostak, Los Angeles, Cal., of counsel), for plaintiff.

William D. Ruchelshaus, Asst. Atty. Gen. (Brian S. Goldstein, New York City, trial attorney), for defendant.

Before RAO and FORD, Judges.

RAO, Chief Judge:

The merchandise involved in this case, entered at the port of Los Angeles, consists of blades or cutting units for so-called electric carving knives. They are described on the commercial invoices as "Cutting Blades for power machine for slicing meat." The articles were assessed with duty under item 649.85, Tariff Schedules of the United States, at 27.5 per centum ad valorem and 5.5 cents on each side of the blades, as blades for knives which have folding or other than fixed blades.

Plaintiff claims, in the alternative, that the merchandise is properly dutiable at 10 per centum ad valorem under item 649.67 of said tariff schedules, as other cutting blades for power or hand machines, or at 0.92 cent each plus 10 per centum ad valorem under item 650.01 of said tariff schedules, as knives not specially provided for elsewhere in this subpart, without their handles. Plaintiff also claims that if the specific rate of duty is applicable, it should be imposed on each cutting unit rather than on each side of the blade. Other claims in plaintiff's amended protests are not relied upon and are deemed abandoned.

The pertinent provisions of said tariff schedules are as follows:

> Pen knives, pocket knives, and other knives, all the foregoing which have folding or other than fixed blades or attachments; and blades, handles, and other parts thereof:
>
> \*  \*  \*  \*  \*  \*  \*  \*
>
> 649.85    Blades, handles, and other parts ........5.5¢   each   +
> 27.5%   ad   val.
>
> Knives and cutting blades for power or hand machines:
>
> \*  \*  \*  \*  \*  \*  \*  \*
>
> 649.67    Other ..............................10% ad val.
>
> Knives not specifically provided for elsewhere in this subpart, and cleavers, with or without their handles:
>
> 650.01    Without their handles ................0.92¢   each   +
> 10% ad val.

At the trial, plaintiff called Ronald Weinhart, vice president in charge of sales and production for Household Manufacturing Company. He has been with that firm for about 8 years. Previously, he had attended Wayne University in Detroit, had served in the Marine Corps, where he had received radio and electronics training, and had been a manufacturer's representative in the radio and TV industry. He testified that his duties with Household Manufacturing Company are primarily in production and quality control and in the coordination of production to sales. His firm manufactures cutlery in all sizes, from paring knives to roast slicers and kitchen tools, and similar merchandise. The firm has manufactured millions of knives since he has been there.

Mr. Weinhart testified that he was familiar with the merchandise involved herein and described it as "units for the

power machines, the blades." A sample was received in evidence as plaintiff's collective exhibit 1. According to the witness, the merchandise was manufactured by his firm's manufacturing facilities in Japan for Troy Industries, as cutting units for their power cutter. Several hundred thousand of them were imported. The witness described the component pieces as follows:

There are two sides to this cutting unit, a right-hand side and a left-hand side. That would be two pieces. There are two spring locking clips, one on the right-hand side and one on the left-hand side. This is to lock it into the power source. That would be two more pieces to have four. There are two rivets on each of the spring clips, which would be four more pieces, making it eight pieces. There is a rivet on the left-hand side which is called a keyhole rivet which fits into the keyhole on the left-hand side.

Q. Excuse me. You said left-hand side first.—A. Which would be on the right-hand side, the keyhole slot. This keyhole rivet has a second collar inside of it, which is movable, so that as the two sides oscillate, or move back and forth together, that little collar in there will roll with it to eliminate excess wear which, I believe, gives us ten pieces.

According to the witness, both sides of the cutting unit are hollow-ground on one side only; that is, the bottom portion of the blade is made thinner than the top part, so that the cutting edge can be sharpened to a finer dimension. Each side has a serrated edge. The inside of each piece has been surface ground to make it perfectly flat within tolerances in the thousandths of an inch. It must be flat so that the two sides can work together as a single pair. If the inside had been hollow-ground, he said, there would be a separation of the cutting edges and the two sides would not cut or slice when oscillating. The two sides are mated, so that they are identical when lined up side by side. The cutting teeth of each side is made to co-incide with the cutting teeth of the other side, thus permitting the two, when oscillating, to cut equally. They are held together by a rivet. Only when they are together is there a full cutting edge. As a pair, the witness considered them a blade.

The witness testified that this merchandise was designed for an electric plug-in type power unit and that it was not usable in any other power source than that for which it was designed. When the power unit is used with the cutting unit, the user does not move his hand except to place the cutting unit where he wants to cut. In the opinion of the witness, the action of the cutting unit combined with the power unit is a sawing action, but because of the power and the speed with which the combination oscillates, it achieves a more even cutting motion.

There was introduced into evidence a cutting unit similar to exhibit 1, except that it was manufactured for Johnson Industries (exhibit 2), and a power unit therefor (exhibit 3). The witness testified that the units were ordered as pairs of slicing blades for power units and that the power and cutting units were designed to be used together as follows:

The cutting unit itself is more than just a cutting unit. It has springs on the ends which have holes in them. These holes, after the blade is inserted into the power source, the cutting unit is inserted in. There are a pair of nylon shuttles inside the power source which guide this in. There are metal tabs on either side, on both sides of the shuttle unit, which, when these springs are inserted, are depressed and then snap into position inside the shuttle, locking them so that the blade cannot be removed or will not remove itself while the power source is oscillating them.

\* \* \* \* \* \*

There is a small electric motor inside the power source, and it has a spiral cam on the end of it so that as

it spins, the shuttles, which fit to the cam, oscillate back and forth.

According to the witness, the cutting unit is fixed in place by the spring clips on either side and by the little metal tabs inside the shuttle that guide the blades into the power source. If the slicing unit, which oscillates or slides back and forth rapidly, were not locked or fixed into the handle securely, the blades would come out and the operator could be seriously hurt.

The witness also testified that the cutting unit must be detachable from the power unit in order to clean the blades. If it were a single piece, both sides could be wiped off, but since it is not, it must be detached in order to clean the inside as well as the outside. The handle, or the power unit, cannot be immersed in water because it is electrical. Furthermore, it is safer to store the cutting unit detached from the power unit. Most manufacturers provide a holder that stores the units separately.

The witness said that in operation the cutting unit acts like an electric saw, although he did not know of any electric saws with two sides.

The witness agreed with the following definition of the word "knife" from the Encyclopaedia Britannica, 19th edition:

> a cutting instrument with blade either fixed to the handle or fastened with a hinge so as to clasp into the handle

In his opinion, the unit consisting of exhibits 2 and 3 does not meet that definition because it has two sides which slide or oscillate back and forth. He did not know of any knives which operate with two cutting surfaces in an oscillating motion.

The witness testified that the combined units form the type of article that is utilized in slicing roasts in the home. It could be used for cutting any type of food—turkey, fowl, eggs, or tomatoes. The power unit and the cutting unit are marketed as a combined item, called an electric carving knife, an electric knife, or an electric slicer. The witness said

that the article is called a knife commercially in order to appeal to women. He said that if it were called an electric saw, it would not have a market value to the retail consumer. For want of a better name, it is called an electric carving knife. It is primarily designed for and sold to housewives for household use.

The witness stated that exhibit 3 is a power machine because it has an electric motor. The cutting unit is a cutting blade, a mechanical blade. He said that the two sides would not cut individually but only when they oscillate together. If only one side were put into the power unit, it would not lock rigidly, would become dangerous, and could come out. The sides of the cutting units are not sold individually. Neither side can be used with any item other than the mate because it would not fit. In the opinion of the witness, the cutting unit would not operate satisfactorily with one blade. The result would be more of a tearing than a slicing motion.

In the witness' view, the blades are fixed in place, although they oscillate when in use. He explained:

> Each blade is fixed in its half of the shuttle that it is locked to. Now, the shuttle is in two parts. The blade itself, truely [sic], is not moving at all. The shuttle is moving back and forth in this type of a manner (indicating) and with the blade, locked in through the means of the spring locking clip, it is being carried by the shuttle itself. Each side is not physically moving on its own. It is being carried and slid back and forth. And as one is being carried forward, the other one is being carried backward.

He admitted that the entire unit will perform the same function as a knife in the sense that it will cut or slice, and that it will cut thinner than a regular hand knife.

■ Since the collector has classified the merchandise under item 649.85, it is presumed that he found that the articles consisted in fact of blades for knives with folding or other than fixed blades

and that they were provided for under that item. F. H. Kaysing v. United States, 49 CCPA 69, 71, C.A.D. 798; E. I. du Pont de Nemours & Co. v. United States, 27 CCPA 146, 149, C.A.D. 75. The burden rests upon plaintiff to establish that this classification is erroneous and that the claimed classification is correct. United States v. Victoria Gin Co., Inc., et al., 48 CCPA 33, C.A.D. 759; United States v. Gardel Industries, 33 CCPA 118, 121, C.A.D. 325; Novelty Import Co., Inc. v. United States, 53 CCPA 28, 32, C.A.D. 872.

It is plaintiff's contention in the instant case that the combined power and cutting units do not constitute a "knife" within the common meaning of that term; that the combination is not classifiable as a knife and that, therefore, the cutting unit cannot be classified as blades for knives.

Both parties have called our attention to definitions of the term "knife." For example,

Webster's Third New International Dictionary:

Knife—1 a: a simple instrument used for cutting consisting of a sharp-edged usu. steel blade provided with a handle * * * c: a culinary utensil consisting of a knife usu. with blade of silver or steel and a handle of metal, ceramic, bone, or pearl * * * d: a share cutting blade or tool in a machine (as a band saw, a wood-planing machine, or a mowing machine) * * *

Encyclopaedia Britannica (14th edition, 1929):

KNIFE, a small cutting instrument with the blade either fixed to the handle or fastened with a hinge so as to clasp into the handle * * *

Audel's New Mechanical Dictionary, 1960:

knife—1 an instrument consisting of a thin blade, usually of steel, and having a sharp edge for cutting, fastened to a handle; as table knife, putty knife, pocket knife, chopping knife, etc.

Britannica World Language Edition of Funk & Wagnalls Standard Dictionary, Vol. I, Part I, (page 705).:

knife * * * n. pl. knives * * * 1. A cutting instrument with one or more sharp-edged, often pointed blades, commonly set in a handle. An edged blade forming a part of an implement or machine. * * *

It appears that lexicographers are in agreement that a knife is a cutting instrument with a blade and a handle. The blade may be either fixed or fastened with a hinge. One definition states that a knife may have one or more blades. Plaintiff admits that there are many types of knives which have more than one blade but claims that no reference can be found to any knives which have one handle and two blades which function by oscillating together and cannot properly function individually.

According to the record and common knowledge, the combined unit is bought and sold as an electric carving knife, an electric knife, or an electric slicer. The witness admitted that it performed the same function as a knife, operating more efficiently in that thinner slices could be cut. The court has had occasion in recent years to consider the classification of common articles which are equipped with small motors and operate by electricity. Fred Roberts Co. v. United States, 46 Cust.Ct. 254, C.D. 2265 (electric shoe brushes); Kaysons Import Corp. v. United States, 56 Cust.Ct. 146, C.D. 2622 (electric toothbrushes).

In the *Roberts* case, the court described the merchandise as follows (p. 255):

* * * It consists in part of what might be termed a handle, made of metal, in form very much like the body of a cylindrical flashlight, holding three battery cells and having a switch conveniently located thereon. Attached to the handle is a head, made of plastic, housing an electric motor and some sort of gearing arrangement, which transmits the rotating force of the motor at a right angle to the handle and to a plastic circular disk, into

which are set tufts of hair or bristles about an inch long.

In holding that the article was a brush, the court said:

> * * * It seems clear that the article at bar is used principally for the same purpose as the familiar hand-operated shoe shining brush that consists of bristles or hair set into a wooden or other back. The article before us does not do anything but shine or polish shoes or other objects upon which it is used. It is our view, therefore, that it is nothing more than a brush, albeit electrically operated.

In the *Kaysons* case, the merchandise consisted of a battery container, a motor unit, and 4 toothbrush heads, each of which fit into the motor unit handle. The court pointed out that the article had more parts than were contemplated by the primary definition of a brush but that it was known, bought, and sold as an electric toothbrush. It also stated (pp. 150, 152):

> Plaintiff in the instant case claims that the imported electric toothbrush is more than a toothbrush since allegedly it massages the gums as well as brushes the teeth. It is shown, as might be expected, that the vibratory motion of the article in use is unlike that imparted to a hand toothbrush by the user's arm. Whether the word "massage" applies accurately to the effect of the import on the gums and whether a hand-operated toothbrush can likewise achieve a "massage" are not really relevant issues. No electric brush, that in *Roberts, supra,* or any other, exactly duplicates the motion and effect of a hand counterpart. The issue is whether the involved articles are known commonly and in the trade and commerce of the United States as toothbrushes. Nylos Trading Company v. United States, 37 CCPA 71, C.A.D. 422. Congress legislated for the future and is presumed to have intended to cover all forms of the article, including improved models not known in 1930. J. E. Bernard & Co., Inc., et al. v. United

States, 52 Cust.Ct. 56, C.D. 2436; United States v. L. A. Salomon & Bros., 22 CCPA 490, T.D. 47483.

> * * * * * *

> In the instant case, the article electrically operated, is called an electric toothbrush. (Although but recently invented, similar articles are widely sold and advertised in the United States as electric toothbrushes.) It is evident that the application of electrical operation to small articles in common use, such as various kinds of brushes, is going to make them more complicated in structure. If the buyer gets, for better or for worse, a dose of gum massage with every utilization of the article, that is part of the gain he derives or price he pays for living in 1966. The brush is still a brush. The article here, being known in common speech and to commerce as a toothbrush, is properly classifiable as such.

These observations are pertinent to the present case. The combined power and cutting units have more parts than are contemplated by the primary definition of knife; such parts are necessitated by the application of electricity to the operation of the articles; the articles operate somewhat differently from a hand carving knife, but perform the same essential function; they are widely sold and advertised in the United States as electric carving knives. We conclude that they are knives, as that term is commonly understood.

Plaintiff claims that even if the articles constitute knives, the cutting blades are more specifically provided for as cutting blades for power machines. According to the Tariff Classification Study of 1960, Schedule 6, Part 3, page 194, item 649.65 covers blades for agricultural and horticultural machines, and item 649.67 reflects the then current treatment of other knives and cutting blades in paragraph 356. Said paragraph of the Tariff Act of 1930 provides:

> Par. 356. Planing-machine knives, tannery and leather knives, tobacco

knives, paper and pulp mill knives, roll bars, bed plates, and all other stock-treating parts for pulp and paper machinery, shear blades, circular cloth cutters, circular cork cutters, circular cigarette cutters, meat-slicing cutters, and all other cutting knives and blades used in power or hand machines, 20 per centum ad valorem.

■ It is apparent from the language in this paragraph and from the cases decided thereunder that the provisions were comprehensive and covered knives and blades for many kinds of articles. Stumpp & Walter Co. v. United States, 53 Treas.Dec. 986, Abstract 5819; Ingo Maddaus v. United States, 47 Treas.Dec. 432, T.D. 40814; George Hayes v. United States, 4 Cust.Ct. 146, C.D. 308.

The blades covered by item 649.85, on the other hand, are limited to those for knives which have other than fixed blades. The latter, being more specific, must prevail. United States (Lansen-Naeve Corp. a/c Albert Klingelhofer, Party-in-Interest) v. Simon Saw & Steel Co., 51 CCPA 33, C.A.D. 834. See also United States v. American Express Co., 12 Ct.Cust.Appls. 483, 485, T.D. 40693, in which it is stated that such general language as "all other cutting knives and blades used in power or hand machines" could not be considered a special provision supplanting such specific language as that of paragraph 1504 for "Machinery for use in the manufacture of sugar."

■ Plaintiff's next contention is that the cutting blades herein are fixed blades. This argument is based on the fact that when in use the blades must be locked into place and securely fastened to the shuttle within the handle. In our view, that factor alone would not bring an article within the concept of a knife having a fixed blade. Any blade would have to be securely fastened to a handle in order for the knife to be of any practical use. Folding blades are securely attached to handles but may be folded into the handle when not in use. In the instant case, the blades are designed to be detached for cleaning and storage.

They are not permanently affixed to the handle. In addition, they oscillate when in operation.

In H. A. Mack & Co. v. United States, 44 Cust.Ct. 310, Abstract 63695, the merchandise consisted of a single piece of metal fastened in the center to a wooden handle in such a manner that it might be pivoted. One end had a blade with a serrated cutting edge, and the other end had a blade with a plain cutting edge. When one blade was in use the other, by means of the pivot, was sheathed or folded into the handle. In the course of the opinion, the court referred to Webster's New World Dictionary of the American Language, and stated (p. 311):

The word "fold," when used as a transitive verb, means, among other things, "to bend or press (something) so that one part is over another; double up on itself."

One of the meanings ascribed to the word "fix" is "to make rigid."

The foregoing definitions lend support to our conclusion that the *subject merchandise not only has folding blades, but also that they are other than fixed blades.* [Emphasis supplied.]

Since the blades herein are completely detachable, the articles of which they form a part are knives with other than fixed blades.

■ Plaintiff last contends that the specific duty should have been assessed on each pair making up the blade and not on each piece separately. This contention is made on the ground that the two pieces are designed to operate together, cannot be used alone to cut or slice, and have no useful function or value unless joined into a single entity, and used with a particular power unit. Item 649.85, under which the instant merchandise was assessed with duty, covers blades, handles, and other parts of knives with folding or other than fixed blades. The collector did not assess duty on all of the pieces of the cutting unit separately, evidently not con-

**330**

sidering them to be parts of knives. He did, however, assess duty separately on the two sides of the cutting unit, regarding each of them as a blade. The term blade has been defined as follows:

Funk & Wagnalls New Standard Dictionary (1956 edition):

blade 1. The flat cutting part of a knife, sword, or other edged tool or weapon; * * *

Webster's New International Dictionary (1958 edition):

blade * * * 3. The cutting part of an instrument; as the blade of a knife or a sword.

Audel's New Mechanical Dictionary, 1960:

blade—The cutting part of various edge tools.

In the instant case, the cutting part of the instrument consists of two pieces which are designed and manufactured to operate together. According to the witness, each piece is only one side of a cutting edge. It has been sharpened but has not been hollow-ground on both sides to give it a cutting surface. Together, the two pieces form a full cutting edge. In the opinion of the witness, cutting could not be done satisfactorily with only one piece.

We conclude that the blade of the electric carving knife consists of the two pieces which must operate together to perform the function of the knife.

In Alaska Fur Co. et al. v. United States, 2 Cust.Ct. 524, Abstract 40337, the merchandise consisted of two pieces of ivory necessary to form the handle of a knife. The applicable provision of paragraph 354 of the Tariff Act of 1930 covered "handles, or other parts of any of the foregoing knives." The court held that since two sides were needed to form the handle, specific duty was to be assessed on the pair and not on each side.

Here, item 649.85 covers "blades, handles, and other parts." Since the two pieces are necessary to form the blade in the instant case, specific duty should

have been assessed on each pair, rather than on each piece.

For the reasons stated, we hold that the imported articles are dutiable under item 649.85 of the Tariff Schedules of the United States, as blades for knives which have folding or other than fixed blades, at 27.5 per centum ad valorem and 5.5 cents on each unit, rather than on each of the two pieces forming the blade.

To that extent the protests are sustained. As to all other claims, they are overruled. Judgment will be entered accordingly.