(C.D. 3997)

ROMICKS INTERNATIONAL, INC. v. UNITED STATES

United States Customs Court, First Division

(Decided April 14, 1970)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Thomas Fernandes* and *Frederick L. Ikenson*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and ROSENSTEIN, Judges; MALETZ, J., concurring

ROSENSTEIN, Judge: The merchandise involved herein was entered by the customs broker as "hand tools", is described on the entry papers as "pipe cleaners", and listed on the commercial and special customs in-

voices as "smokers knives stainless steel". The articles were assessed with duty at 25 per centum ad valorem and 12½ cents each under TSUS item 649.79, as knives valued over $3 but not over $6 per dozen, under the superior heading for pen, pocket and other knives having folding or other than fixed blades or attachments. Plaintiff claims that the merchandise is properly dutiable at 17 per centum ad valorem under TSUS item 651.47, as other hand tools, not specially provided for, of steel.

The competing provisions read as follows:

Schedule 6, Part 3, Subpart E.

[Classified]      Pen knives, pocket knives, and other knives, all the foregoing which have folding or other than fixed blades or attachments; and blades, handles, and other parts thereof:
> Knives:

\*      \*      \*      \*      \*      \*      \*

649.79            Valued over $3 but not over $6 per dozen_____ 12.5¢ each +25% ad val.

[Claimed]      Hand tools (including table, kitchen, and household implements of the character of hand tools) not specially provided for, and metal parts thereof:

\*      \*      \*      \*      \*      \*      \*

> Other hands tools:

\*      \*      \*      \*      \*      \*      \*

> Other:
>> Of iron or steel:

\*      \*      \*      \*      \*      \*      \*

651.47            Other _____ 17% ad val.

Each party proffered an article which it claimed was illustrative of the imported merchandise. Plaintiff's sample (exhibit 1) is a rectangular metal housing, or handle, approximately 3⅜ inches long, with a rounded metal tip which was described by plaintiff's witness as a "tamper", at one end. The handle encloses a folding pick and a folding blade with a cutting edge which is rounded at the end.

The government's sample (exhibit A), which is similar in shape and size to exhibit 1, also has a tamper on one end but comes in a leather case. It contains three folding components: a pick, a blade with

a sharp cutting edge that comes to a point, and a blade with blunt non-cutting edges and rounded at the end.

Plaintiff's witness, Meyer M. Romick, founder and president of the importing company, which sells pipes, pipe tobacco and smokers' articles to wholesalers, retailers, and distributors, testified that he is familiar with the merchandise described on the invoices herein; had approved the entry forms, designed the merchandise described therein, which he had seen prior to shipment to the United States; and that exhibit 1 is similar thereto in all material respects. This exhibit, he alleged, came from either the same or a subsequent shipment.

Mr. Romick stated that exhibit 1, which he referred to as a "pipe tool", was unique in that it was of stainless steel, lower priced than competitive items, washable, and that the folding blade, which he called a "reamer", did not have a sharp point which could work a hole through the bottom of a pipe. The reamer, in his opinion, is not a knife blade, but a "tool to clean the accumulated carbon in the bowl of a pipe." It was stipulated that the sharp edge of the blade could cut paper and wood, and sharpen pencils.

Exhibit 2, an article similar to defendant's exhibit A, with three folding components, was received in evidence as illustrative of "another type of pipe tool."

Defendant's witness, Alois Munch, the supervisory import specialist at Los Angeles who classified the subject shipment, testified that he had asked the sampler to take a sample of the merchandise at the time they were looking at it on the dock. The sample came to him marked with the entry number and information relative to the name of the manufacturer, importer and seller. The sampler did not give him anything else to identify the article. The witness did not "know definitely who the sampler was" and doubted if he was still with them. Although the merchandise is described on the invoices as "smokers knives stainless steel one dozen to a display card", without reference to a case, Mr. Munch stated that, occasionally, pocket knives imported in cases are listed without such reference.

Plaintiff's witness testified, on rebuttal, that he had never imported exhibit A, which is a "four component pipe article", and had not even seen it until the trial. He ordered his merchandise mounted on a display card, not in cases.

The entry papers, including the invoices, were moved in evidence by government counsel.

In considering the respective samples, we note that the classifying officer did not personally examine the shipment at bar, could not identify the sampler who took exhibit A from the shipment, and that he had received the article without any notation or marking which would

identify it as coming from the entry herein. Moreover, the record is silent as to the sampling procedures. In short, there is no evidence to link the government sample with the shipment.

In light of Mr. Romick's testimony that he was not familiar with exhibit A, that he had designed and inspected the merchandise in Japan prior to shipment, and that exhibit 1 was similar in all respects to what he had ordered, we find that plaintiff has overcome the presumption that the government sample is representative of the merchandise involved, and hold that exhibit 1 is illustrative of the importation.

Plaintiff contends that the articles in issue are smokers' pipe tools, that they are not knives, and are not, by whatever name described, within the ambit of the superior heading to item 649.79.

Defendant argues that exhibit 1, assuming it to be illustrative of the subject merchandise, is a knife with a folding blade within the meaning of item 649.79; and also alleges that plaintiff has failed to make a *prima facie* showing that the items at bar are wholly or in chief value of iron or steel, which is a prerequisite to classification under item 651.47.[1]

Defendant's latter argument was never raised by government counsel as an issue during trial: he did not question the competency of plaintiff's witness to testify as to the metallic composition of the article; he failed to cross-examine him on this point; and he offered no evidence to controvert this testimony. Rather, he placed all the official papers, including the invoices describing the articles as "stainless steel," into evidence.

Statements contained in such papers are normally considered hearsay, but when a party moves them in evidence, without objection, they are to be given their natural probative effect. Therefore, where the official papers containing invoice descriptions are received in evidence the court may consider such statements as evidence. *W. T. Grant Company v. United States*, 38 CCPA 57, C.A.D. 440 (1950), and cases cited therein; *Arthur J. Fritz & Co., Inc. v. United States*, 52 Cust. Ct. 61, C.D. 2437 (1964). It would seem almost superfluous to note that a party is bound by its own documentary proofs. *United States v. Berben Corporation*, 49 Cust. Ct. 497, A.R.D. 147 (1962).

It may be that the testimony of the witness upon this point would have been greatly weakened by timely and specific objections and by cross-examination; but this was not done and his testimony that the merchandise is of stainless steel must be considered. *United States v. Toledo Museum of Art*, 25 CCPA 373, T.D. 49455 (1938).

[1] General Headnote 9(f)(i), TSUS, provides that, when used between the description of an article and a material, the term "of" means that the article is wholly or in chief value of the named material.

Under these circumstances, we find that plaintiff has established, *prima facie*, that the merchandise is of steel.

We find, however, that plaintiff has failed to establish that the merchandise was erroneously classified by the district director.

Items 649.71 through 649.85 are subdivisions under the superior heading for "Pen knives, pocket knives, and other knives, all the foregoing which have folding or other than fixed blades or attachments; and blades, handles, and other parts thereof". This heading differs from its predecessor, paragraph 354 of the Tariff Act of 1930, which provided in part:

> Penknives, pocketknives, clasp knives, pruning knives, budding knives, erasers, manicure knives, and all knives by whatever name known, including such as are denominatively mentioned in this Act, which have folding or other than fixed blades or attachments,
> * * *.

That paragraph was evidently intended to be invasive and has been construed to be a comprehensive one, including all knives which have folding blades. *J. M. Altieri* v. *United States*, 62 Cust. Ct. 91, C.D. 3687, 295 F. Supp. 269 (1969). See *Voss Cutlery Co.* v. *United States*, 41 CCPA 42, C.A.D. 526 (1953) (combination desk knife and letter opener); *Silberstein* v. *United States*, 3 Ct. Cust. Appls. 239, T.D. 32562 (1912) (combination penknife and letter opener); *E. M. Stevens Corp.* v. *United States*, 58 Cust. Ct. 512, C.D. 3033, 270 F. Supp. 25 (1967) (combination money clip, with folding knife blade and nail file); *Astra Trading Corp.* v. *United States*, 51 Cust. Ct. 132, C.D. 2420 (1963) (combination camping knife with folding blade, spoon, fork, bottle opener and other attachments); *Crystal Craft, Inc.* v. *United States*, 37 Cust. Ct. 368, Abstract 60247 (1956) (miniature penknife).

The superior heading in the revised tariff schedules is not as all-embracing as its predecessor: budding, grafting, pruning, and cuticle or corn knives, among others, are separately provided for and are no longer under the general provision for knives with folding blades. *J. M. Altieri* v. *United States, supra.* However, unless more specifically provided for elsewhere, knives with folding blades come under the aforesaid superior heading.[2]

Is exhibit 1 a knife with a folding blade within the meaning of TSUS? Tariff acts are drawn in the language of commerce which is presumptively that in common use. It is the province of this court, as a matter of law, to determine whether the article falls within the

---

[2] In this context, plaintiff does not contend that the claimed item 651.47 is more specific than item 649.79.

common meaning of "knife". *E. M. Stevens Corp.* v. *United States, supra.*

The briefs of both parties refer to various dictionary definitions of that term. Without setting them forth, we note that all the definitions require that a knife be a cutting instrument or have a blade with a sharp edge for cutting. In fact, these definitions have generally served as a basis for judicial determination of whether or not an article is a knife for tariff purposes. *Household Mfg. Co.* v. *United States*, 62 Cust. Ct. 198, C.D. 3729, 296 F. Supp. 323 (1969) (cutting blades for meat slicing machines); *E. M. Stevens Corp.* v. *United States, supra; Geo. G. Wagner Co. and Frank P. Dow Co., Inc.* v. *United States*, 48 Cust. Ct. 348, Abstract 66486 (1962) (oval cake or pie server with partially serrated edge); *Paul E. Sernau, Inc.* v. *United States*, 46 Cust. Ct. 514, Abstract 65737 (1961) (toy pocketknife lacking a cutting edge).

The folding blade in exhibit 1 has a sharp cutting edge which can sharpen a pencil, cut wood and paper, and scrape or cut away carbon in a pipe bowl. We find that the sample possesses the characteristics of, and is, a knife within the common meaning of the term. The importer's description of the blade as a "reamer" does not take the article out of the category of knives. Even if so designated in trade and commerce (and commercial designation is not here claimed or proved) it merely serves to identify and distinguish this type of knife from the general class of articles which are knives within the common ordinary understanding of the term. *F. A. Koch & Co.* v. *United States*, 30 Treas. Dec. 744, T.D. 36385 (1916).

Thus, although the article herein may be designed for a specific use (the absence of testimony as to actual use is noted) it is, nevertheless, a knife with a folding blade.

Plaintiff stresses the fact that the blade is not pointed; but many knives, such as putty, palette, paper hanger's knives, and the pie servers the subject of *Geo. G. Wagner Co. and Frank P. Dow Co., Inc.* v. *United States, supra,* to name a few, do not come to a point.

The cases cited by plaintiff, *Alfred Dunhill of London, Inc.* v. *United States*, 24 Cust. Ct. 461, Abstract 54329 (1950), involving carbon cutters, and *Rogers Imports, Inc.* v. *United States*, 29 Cust. Ct. 321, C.D. 1486 (1952), involving pipe cleaners, which construe the provisions in the Tariff Act of 1930 for smokers' articles (paragraph 1552) and for articles designed to be worn on apparel or carried on or about the person (paragraph 1527(c)) are inapposite; the issue of classification of the merchandise as "knives" was never raised therein.

Besides, we are dealing here with different tariff classification schedules.

For the reasons stated, plaintiff has failed to overcome the presumption of correctness attaching to the classification herein.

The protest is overruled and judgment will be entered accordingly.

### CONCURRING OPINION

MALETZ, Judge: I agree that the importations were correctly classified by the district director under item 649.79. In that circumstance, it is entirely unnecessary to consider—as does the majority—whether or not plaintiff has, in support of its affirmative claim under item 651.47, made a *prima facie* showing that the imported articles are wholly or in chief value of steel. Hence, that portion of the opinion dealing with this question is mere dictum.

While I too would conclude—were it necessary for decision—that the record demonstrates that the importations are in chief value of steel, I would do so for reasons that differ from those advanced by the majority. For one thing, unlike the majority, I would give little probative weight to the invoices describing the imported articles as "stainless steel", particularly since they are hearsay and self-serving. See e.g. *Freni* v. *United States*, 60 Cust. Ct. 319, 324, C.D. 3375, 283 F. Supp. 89, 93 (1968); *Rudolph Miles* v. *United States*, 64 Cust. Ct. 151, C.D. 3974, slip op. March 5, 1970, pp. 4–5. True, the invoices are in evidence, but that scarcely means they are thereby entitled to the considerable probative weight the majority seems to afford them; the weight they should be given is still a matter of judicial discretion. See e.g. *W. T. Grant Company* v. *United States*, 38 CCPA 57, 63–64, C.A.D. 440 (1950).

I myself would conclude that the imported articles are in chief value of steel for two reasons: First, even the most casual examination of the articles shows that they are made almost wholly, if not wholly, of that material. See e.g. *John S. Connor, Inc.* v. *United States*, 54 Cust. Ct. 213, 218, C.D. 2536 (1965). Second, plaintiff's counsel developed the facts as to component material of chief value with a broad conclusory statement by a witness who should know. There was no objection by the defendant to the competency of that testimony or any cross-examination on the issue. "Omission to do either * * * connote[d] a willingness that component material of chief value might be decided on the basis of the *prima facie* showing and * * * [since] nothing further transpired would for practical purposes be tantamount to a stipulation." *Chas. Kurz Co.* v. *United States*, 57 Cust. Ct. 73, 79, C.D. 2733 (1966).